UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CARYLANN HENDRIX,**

    Plaintiff,

v.                                     **No. 4:25-cv-00698-P-BP**

**ALLSTATE INSURANCE
COMPANY, *et al.*,**

    Defendant.

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Compel Arbitration (ECF No. 27) that Allstate Insurance Company, National General Management Corp., and Velapoint, LLC (collectively "Defendants") filed on February 6, 2026, Response (ECF No. 32) that Carylann Hendrix filed on February 27, 2026, and Reply (ECF No. 33) that Defendants filed on March 14, 2026. Defendants filed a Motion for Leave to File Reply and Appendix in support (ECF Nos. 33, 34) out of time, on March 17, 2026. ECF No. 35.

As a preliminary matter, for good cause shown the Court **GRANTS** the Defendants leave to file their Reply and Appendix out of time. ECF No. 35. Based upon a full review of the relevant pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **GRANT** Defendants' Motion to Compel Arbitration (ECF No. 27), **STAY** Hendrix's claims pending resolution of this dispute in binding arbitration, and **ORDER**

Hendrix and the Defendants to file a Motion to Reopen the Case, if necessary, following conclusion of the arbitration.

## I.    BACKGROUND

Hendrix worked as a licensed life insurance agent with National General Management Corp., which later merged with Allstate Insurance Company, from 2019 to 2023. ECF No. 1 at 4-5. She sues Defendants for alleged discrimination and retaliation based on sex, gender, race, and disability and for requesting and  for taking leave under the Family and Medical Leave Act ("FMLA"). *Id.* at 9. She claims these actions violated the FMLA, the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981, and constitute defamation under state law. *Id.* at 8-12.

Hendrix exhausted her administrative remedies and received her "Right to Sue" letter from the Equal Employment Opportunity Commission ("EEOC") on April 7, 2025. *Id.* at 3. Hendrix also alleges Defendants misrepresented her disciplinary record in their position statement to the EEOC. *Id.* at 5-6. Finally, Hedrix alleges Defendants "contacted the Oregon Department of Insurance with misleading" and false information regarding her employment and actions which led to the revocation of her insurance license and imposition of a $5,000 fine. *Id.* at 6.

In their motion, Defendants contend that the case is subject to binding arbitration. ECF No. 27 at 2. They assert that Hendrix electronically signed both a Mediation-Arbitration Agreement and a Mutual Arbitration agreement (collectively

"the arbitration agreements") during her employment. *Id.* at 2-5. Defendants assert that Hendrix reaffirmed the agreements on five additional occasions. *Id.* at 3.

The Mediation-Arbitration Agreement states in relevant part: "[y]ou and the Company agree that any controversy or claim arising out of or relating to your employment relationship the Company or the termination of that relationship, must be submitted . . . for final and binding resolution by a single private and impartial arbitrator." ECF No. 27-1 at 4. The Mutual Agreement to Arbitrate states:

> Except as noted below, you agree to arbitrate any and all claims against Allstate that could be brought in a court including, without limitation, all claims arising directly or indirectly from your employment or termination. This Agreement includes, without limitation, claims under federal, state, and/or local statutes, regulations, ordinances, and/or common law. This Agreement is governed by the Federal Arbitration Act. Allstate agrees to arbitrate any and all claims against you.

*Id.* at 10. The Defendants seek an order staying Hendrix's lawsuit and referring the case to arbitration. ECF No. 27 at 7-8.

## II.    LEGAL STANDARD

In the Federal Arbitration Act, Congress expressed "a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). When considering a motion to compel arbitration, the Court must first determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citation omitted).

Where there is a valid arbitration clause, "there is a presumption of arbitrability[,] and the court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Courts resolve doubts in favor of coverage. *Id.* (collecting cases).

## III.    ANALYSIS

### A.    A valid agreement to arbitrate exists under Texas law, and Defendants sufficiently showed Hendrix signed the agreement.

"Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*, 953 F. Supp. 2d. 713, 718 (N.D. Tex. 2013) (collecting Texas cases). "[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (internal quotation marks and citations omitted).

Hendrix argues that she did not sign the arbitration agreements. Because courts "should apply ordinary state-law principles that govern the formation of contracts," she cites the Texas Uniform Transactions Act ("UTA") to argue that Defendants did not provide adequate evidence that she agreed to and signed the arbitration agreements. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996);

ECF No. 32 at 5. "In determining whether an electronic signature can be attributed to an individual, the [UTA's] focus is on the efficacy of the security procedures inherent in the electronic transaction itself." *Hous. ANUSA, LLC v. Shattenkirk*, 693 S.W.3d 513, 518 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (citing Tex. Bus. & Com. Code § 322.009(a) ("[a]n electronic record or electronic signature is attributable to a person [by] showing . . . the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable")).

"[The] proponent of the arbitration agreement bears both the initial burden of establishing the agreement's existence by legally sufficient evidence, and of negating any contravening evidence from [the opposing party]." *Id.* at 519. "The party seeking to hold another responsible for signing an electronic contract must come forward with evidence to establish the efficacy of the security procedures utilized in the transaction." *Id.* (citing *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021)). A security procedure is any "procedure employed for the purpose of verifying that an electronic signature [] is that of a specific person . . . The term includes a procedure that requires the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgment procedures." Tex. Bus. & Com. Code § 322.002(13).

A party can successfully establish the efficacy of security procedures by showing that the procedures prevent unauthorized access or by demonstrating that users must complete all required security steps before moving on to subsequent steps.

5

*Hous. ANUSA, LLC*, 693 S.W.3d at 520 (citing *Solcius, LLC v. Meraz*, No. 08-22-00146-cv, 2023 WL 2261414, at *7 (Tex. App.—El Paso Feb. 27, 2023, no pet.) (mem. op.) (party seeking to compel arbitration provided evidence that it used DocuSign's technology platform, which allows documents to only be opened by the individual with access to the email address and "records the date and time of the execution of the Loan Agreement document . . . among other key information."); *Wal-Mart Stores Tex., LLC v. Peavley*, No. 09-21-00403-cv, 2023 WL 1831122, at *4 (Tex. App.—Beaumont Feb. 9, 2023, no pet.) (mem. op.) (employee did not dispute completing the electronic hiring module, and evidence showed the module could not be completed without acknowledging and consenting to arbitration agreement); *H-E-B, LP v. Saenz*, No. 01-20-00850-cv, 2021 WL 4733460, at *6 (Tex. App.—Houston [1st Dist.] Oct. 12, 2021, pet. denied) (mem. op.) (agreement could only be accessed by a unique identification number and password, which was corroborated by copies of the employee's paperwork showing her unique identification number).

"When a party has presented evidence conclusively establishing the efficacy of the security procedures . . . and the opposing party has failed to come forward with any evidence of fraud or lack of reliability with respect to those procedures, a court has no choice but to enforce the contract." *Id.* (citing *Aerotek*, 624 S.W.3d at 200, 205-07, 209-10). However, if the proponent party does not "conclusively establish the efficacy of the security procedures used to obtain [the] purported signature," it must only "furnish[] more than a scintilla of evidence showing" the employee's assent to shift the burden of showing nonconsent to the party opposing arbitration. *Id.* at 520-

6

21 (citing *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 568 (Tex. App.—El Paso 2016, pet. denied) (if the movant can furnish more than a scintilla of evidence showing the non-movant's assent, the burden shifts to the non-movant to create a fact issue or else to raise technical legal arguments as to why the agreement fails despite the non-movant's apparent assent).

Here, much like the proponent in *Hous. ANUSA, LLC*, Defendants do not sufficiently establish the efficacy of the electronic signature security procedures. 693 S.W.3d at 520. As in that case, Defendants do not "conclusively establish the security procedures used." *Id.* They provide no information on how the signature was secured or whether any measures were taken to prevent unauthorized access. Instead, they only assert that they furnished more than a scintilla of evidence showing Hendrix assented to the arbitration agreements.

Defendants first provide an "audit trail" from one of their databases and that record when employees sign various electronic agreements. ECF No. 33 at 2-3. Defendants also provide the declaration of a "qualifying witness [who] vouches for the authenticity of an agreement purportedly signed by the plaintiff as a business record," s*ee Ramirez*, 510 S.W.3d at 567-69, Hendrix's former supervisor who had knowledge of the employment agreements. ECF No. 33 at 4-5.

Because Defendants provided more than a scintilla of evidence that Hendrix assented to the agreement, the burden shifts to Hendrix to raise a fact issue or legal arguments as to why the agreement fails. *See Kmart Stores of Tex., L.L.C.*, 510 S.W.3d at 568. Hendrix argues that "she did not electronically sign the Arbitration

7

Agreements or consent to the Agreements." ECF No. 32 at 6. Yet her declaration merely states she does not "*recall* reviewing, signing, or knowingly agreeing" to the arbitration agreements. *Id.* at 14 (emphasis added).

In *Hous. ANUSA, LLC*, the Court found that the party opposing arbitration sufficiently raised a fact issue. 693 S.W.3d at 521. There, the proponent party argued merely not recalling signing was insufficient. *Id.* The Court found that the employee did more than not recall, because he denied completing the agreement and stated that his onboarding process was done manually, entirely on paper documents. *Id.* Here, Hendrix makes no such showing. She merely states she does not recall signing the agreement. She does not contend that her documents were completed on paper, her employment onboarding was done manually in-person, or any other similar contention to raise a fact issue. She only states she does not recall signing the arbitration agreements. ECF No. 32 at 14.

Defendants provided more than a scintilla of evidence showing Hendrix's assent, and Hendrix did not meet her burden because she did not raise a fact issue or a technical legal argument that the agreement fails despite her apparent assent. Accordingly, the Court finds that a valid agreement to arbitrate exists between the parties under Texas law and that Hendrix signed the agreement.

**B.    All of Hendrix's claims are within the scope of the arbitration agreements.**

Having found that a valid agreement to arbitrate exists, the Court must next determine whether the present dispute is within the scope of this agreement. *Tittle*, 463 F.3d at 418-419. "[A]rbitration is a matter of contract and a party cannot be

required to submit to arbitration any dispute which [s]he has not agreed to submit." *Id.* at 418 (citing *AT & T Techs., Inc.*, 475 U.S. at 648). "[In] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs.,* 475 U.S. at 650 (1986) (citing *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584-585 (1960)).

Here, the Agreement broadly subjects to binding arbitration "all claims arising directly or indirectly from [Hendrix's] employment or termination." ECF No. 27 at 3. Hendrix's claims for discrimination, retaliation, and violations of the FMLA and ADA fall squarely within the provisions of the Agreement because they relate to Hendrix's employment with Defendants and subsequent termination. Therefore, these claims must be submitted to binding arbitration.

Hendrix argues that because the agreement governs disputes "arising out of employment," it does not cover her post-employment claims for damage to her reputation, revocation of her license, and other professional fallout. ECF No. 32 at 10. Hendrix provides no legal support for this contention. In addition, any such post-employment claims against the Defendants still would "relate to" the employment relationship, as courts have found in similar situations. *See e.g. Robertson v. Intratek Computer, Inc.,* 976 F.3d 575, n.2 (5th Cir. 2020) (Noting post-employment defamation actions related to the employment relationship because if the relationship had "not gone awry," the post-employment actions would not have occurred.).

9

Similarly, Defendants' actions relating to Hendrix's professional reputation would not have occurred if the employment relationship had not gone awry. Additionally, doubts concerning the scope of arbitration clauses are resolved in favor of arbitration. *AT & T Techs., Inc.*, 475 U.S. at 650. "Such a presumption is particularly applicable where the clause is [] broad" like the one employed in this case. *Id.* Because Hendrix provides no legal authority for her contention and her post-employment claims arise out of or relate to her employment relationship, the Court finds that all of Hendrix's claims are within the scope of the arbitration agreements.

### C.    Defendants did not waive the right to arbitrate.

To determine if a party has waived its right to arbitrate, the Court must determine "whether the party knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right. . . substantial invocation of the judicial process is merely one way of demonstrating that a party waived its right." *Garcia v. Fuentes Rest. Mgmt. Services Inc.*, 141 F.4th 671, 676 (5th Cir. 2025) (cleaned up). "[W]hether a party waived its right to arbitrate is necessarily fact-intensive[,]" and Courts "consider the totality of the circumstances in determining whether a party has waived its right to arbitrate." *Id.* at 677.

"To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (citing *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir.1999)). The Fifth Circuit has emphasized that "the question of what constitutes a waiver of

the right of arbitration depends on the facts of each case," and "a bright-line rule is inappropriate." *Id.*

However, "seeking a decision on the merits before attempting to arbitrate" waives a party's right to arbitration. *Id.* (citing *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009)). Additionally, parties stating they are not considering arbitration to resolve the dispute may also waive their right to arbitrate because it constitutes an "overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Garcia*, 141 F.4th at 678.

In contrast, the Fifth Circuit "has considered routine scheduling orders and discovery continuances as district court actions that may not move the needle on waiver." *Id.* (cleaned up). And "[a]nswering a complaint does not typically suggest that a party has substantially invoked the judicial process." *Id.* at 679. However, "[i]n *Morgan*, the Supreme Court noted that while the defendant answered the complaint and asserted fourteen affirmative defenses, none of them mentioned the arbitration agreement" which the Supreme Court noted "corroborate[d] [the Defendant's] later statement that they had no intent to arbitrate." *Id.* at 679 (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 414 (2022)).

"It is generally true that participation in discovery does not weigh heavily in favor of waiver." *Id.* at 678. As for a delay in moving to compel arbitration, "a defendant may allow significant time to pass and may engage in some preliminaries of litigation without the court's finding substantial invocation . . . [the issue is

11

analyzed] objectively, independent of motivation." *Id.* at 680 (cleaned up). And "while there is no bright-line rule, [the Fifth Circuit has] previously found a thirteen-month delay to be permissible where the defendant 'was not entirely responsible for the delay.'" *Id.* (citing *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991), *Tenneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d 416, 420-21 (5th Cir. 1985) (permitting an eight-month delay)).

Hendrix argues Defendants have waived their right to compel arbitration. ECF No. 32 at 7. But she engages in none of the factual analysis required for this determination. Instead, she merely contends waiver is appropriate because "Defendants litigated this case for seven months," and "engaged in significant discussions with Plaintiff" regarding the scheduling order and agreements of the parties. ECF No. 32 at 9-10. But Hendrix does not assert that Defendants substantially invoked the judicial process. *Garcia.* 141 F.4th at 676.

Instead, the Defendants' participation in this case is much more akin to the "routine scheduling orders and discovery continuances" that "may not move the needle on waiver." *Id.* And unlike the answer in *Morgan* that never mentioned that the dispute was subject to arbitration, here Defendants' answer mentions the Mandatory Arbitration Agreement in its first paragraph. *See* ECF No. 14.

Defendants have filed no substantive motions on the merits. Nor did they represent that they were not considering arbitration like the situation in *Garcia,* 141 F.4th at 676, and explicitly stated that Hendrix's claims were subject to arbitration. ECF No. 14. Defendants conferred with Hendrix on various preliminary issues and

participated in some discovery, both factors that do not weigh in favor of a finding of waiver. The fact that seven months have elapsed also does not show that Defendants substantially invoked the judicial process, and Hendrix cites no authority for such a contention. Considering the totality of the circumstances as the Fifth Circuit requires, the Court finds Defendants have not waived their right to arbitrate. *Garcia*, 141 F.4th at 677.

### D.    The Court should stay the case pending arbitration.

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024). Here, Defendants move to stay the instant proceeding pending resolution of the claims through arbitration. ECF No. 27 at 8. Judge Pittman should thus stay the case pending resolution of the arbitration proceedings and order the Clerk to administratively close the case in the meantime.

## IV.    CONCLUSION

For these reasons, Judge Pittman should **GRANT** Defendants' Motion to Compel Arbitration (ECF No. 27), **STAY** Hendrix's claims pending resolution of this dispute in binding arbitration, and **ORDER** Hendrix and the Defendants to file a Motion to Reopen the Case, if necessary, following conclusion of the arbitration.

A copy of this findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

It is so **ORDERED** on March 18, 2026.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE